UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT D. SANGO #252200,

        Plaintiff,

v.

EUBANKS and FLEURY,

        Defendants.
_____/

Case No. 2:20-cv-00181

Hon.  Robert J. Jonker
Chief U.S. District Judge

# REPORT AND RECOMMENDATION

## I. Introduction

This is a civil rights action brought by state prisoner Robert D. Sango pursuant to 42 U.S.C. § 1983.  Sango alleges in his verified complaint that Corrections Officers Eubanks and Fleury, employees at Alger Correctional Facility (LMF), made threatening statements because he filed a federal lawsuit.  (ECF Nos. 1 and 14.)  Sango says that after he received an order to proceed *in forma pauperis* in Case No. 2:20-cv-160, Corrections Officer (CO) Fleury told him, on September 18, 2020, "don't get comfortable" and that he would be "off the yard soon."  (*Id.*, PageID.2.)  Sango says that he interpreted this comment to mean that he would be hurt or killed.  (*Id.*)

Sango says that CO Eubanks entered the dayroom after Fleury's comment, and announced to the prisoners who were present (more than 20) that they would all receive misconduct tickets because Sango had filed a civil action against him (meaning Eubanks).  (*Id.*)  Sango says that the prisoners got upset with him and

began calling him a "boge," which Sango says is another name for a "snitch." Sango says that when he walked by CO Fleury, Fleury threatened him by stating that the entire unit would come after him and he would tell Sango's family that he was "informing on the prisoners to staff" so other prisoners would kill him. (*Id*., PageID.3.) It appears that Sango is alleging that COs Fleury and Eubanks made these statements in retaliation for his complaint in Case No. 2:20-cv-160.

Defendants Fleury and Eubanks filed a motion for summary judgment alleging that Sango failed to exhaust him administrative remedies. (ECF No. 12.) Sango filed a response in which he argued that because Defendants threatened him, he is excused from the requirement of exhausting his administrative remedies due to intimidation. (ECF No. 14.) In reply, Defendants argue that Sango has offered nothing but conclusory statements that fail to create a genuine issue of material fact. (ECF No. 16.)

Accepting Sango's allegations as true, the undersigned concludes that Sango has failed to establish a genuine issue of material fact regarding the availability of the grievance system due to intimidation prior to the time that he filed his complaint. The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court grant Defendants' motion for summary judgment and dismiss the complaint.

## II. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.  Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."

---

[1]  Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

3

*Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process

4

through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated

grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R.

In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

## IV. Analysis

The records provided by Defendants confirm that Sango did not exhaust his administrative remedies. (*See* ECF No. 13-3 (MDOC Prisoner Step III Grievance Report); ECF No. 16-2, PageID.93 (Prisoner Grievance Summary Report).) Sango does not argue that he exhausted his claims. Instead, he argues that no administrative remedy was available to him. Sango alleges that once Defendants threatened him, he no longer had any available remedies to exhaust prior to filing this lawsuit. (ECF No. 14, PageID.71.) Sango says that Defendants called him a "snitch" in front of other prisoners, and this placed his life in danger. (*Id.* and Sango's

---

[2]   In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

declaration ECF No. 15, PageID.74.) Sango argues that any threat or act of intimidation excuses the requirement that he exhaust his administrative remedies before filing a federal civil rights action.

Sango's argument is based upon the 2016 Supreme Court decision in *Ross v. Blake*. Sango argues that under *Ross*, Defendants' conduct intimidated him and relieved him of his obligation to exhaust his administrative remedies prior to filing this federal lawsuit. As noted above, in *Ross*, the Supreme Court held that the grievance process is not available "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S.Ct. at 1859-60. A threat made against a prisoner because of his litigation activities may thwart a prisoner's use of the grievance system. *Does 8-10 v. Snyder*, 945 F.3d 951, 967 (6th Cir. 2019) (retaliatory harassment and threats of harm, if true "render the grievance process functionally unavailable for a person of ordinary firmness.")

The undersigned recognizes that Sango has successfully asserted this argument in at least one prior case. Sango made a similar argument in *Sango v. Brandt*, 1:19-cv-58, 2019 WL 8399788 (Dec. 6, 2019), opinion adopting report and recommendation, 2020 WL 181411 (W.D. Mich. April 9, 2020). In *Brandt*, Sango asserted that he had exposed illegal drugs sales by COs and, as a result, was threatened with physical violence. Sango said that he feared harm if he reported the Officers' wrongdoing by filing a grievance. Sango argued that the grievance process was not available to him due to intimidation. This Court concluded that the grievance

process was unavailable because intimidation through threats of physical violence could prevent a prisoner from reporting wrongdoing through the grievance process. *Id.*

The record in this case, however, indicates that the grievance system was available to Sango. Sango's complaint is dated September 18, 2020, and he asserts conduct by Defendants that occurred on September 16, 2020. The record in this case indicates that Sango filed numerous grievances before, during and after September 2020. His grievance summary report, shown below, demonstrates that he filed seven grievances in August 2020, one grievance in September 2020, and another seven grievances during the remaining months of 2020.

## Prisoner Grievance Summary Report

| Grievance | Number | Name | Facility | Issue | I Recd | I Dec | II Recd | II Dec | III Recd | III Dec |
|---|---|---|---|---|---|---|---|---|---|---|
| 20200968 | 252200 | SANGO | LMF | 17A | 8/3/2020 | d | | N | | |
| 20200969 | 252200 | SANGO | LMF | 17A | 8/3/2020 | d | | N | | |
| 20200976 | 252200 | SANGO | LMF | 17I | 8/4/2020 | p | | N | | |
| 20201009 | 252200 | SANGO | LMF | 17I | 8/10/2020 | d | 8/31/2020 | d | | |
| 20201035 | 252200 | SANGO | LMF | 28C | 8/14/2020 | x | | N | | |
| 20201038 | 252200 | SANGO | LMF | 28J | 8/14/2020 | x | | N | | |
| 20201039 | 252200 | SANGO | LMF | 27Z | 8/14/2020 | x | | N | | |
| 20201239 | 252200 | SANGO | LMF | 17I | 9/25/2020 | d | | N | | |
| 20201390 | 252200 | SANGO | LMF | 27B | 10/21/2020 | x | 11/2/2020 | d | | |
| 20201394 | 252200 | SANGO | LMF | 28A | 10/21/2020 | x | 11/2/2020 | d | | |
| 20201580 | 252200 | SANGO | LMF | 28E | 11/19/2020 | x | | N | | |
| 20201628 | 252200 | SANGO | LMF | 28B | 12/4/2020 | x | | N | | |
| 20201664 | 252200 | SANGO | LMF | 28J | 12/14/2020 | x | | N | | |
| 20201697 | 252200 | SANGO | LMF | 26Z | 12/17/2020 | d | 1/4/2021 | d | | |
| 20201698 | 252200 | SANGO | LMF | 17A | 12/17/2020 | d | | N | | |

(ECF No. 16-2, PageID.93.) Some of those grievances stated complaints against the Defendants in this case. (*See* ECF No. 16-2, PageID.132 (stating a grievance against CO Eubanks on October 18, 2020); 135 (stating a grievance against CO Fleury on

10

December 2, 2020), 153 (stating a grievance against CO Fleury on December 15, 2020).) Clearly, the grievance system was available to Sango during the relevant period and he was willing to use it. Indeed, Sango filed grievances against the named Defendants in this case *after* the alleged incidents in this case took place. Sango's claim that he was too intimidated to use the grievance system is not supported by the factual record, especially when the record contains grievances Sango filed against Defendants and others. Contrary to Sango's assertion, the prison grievance system was available and accessible to him during 2020.

Sango makes no attempt to explain how he was intimidated out of filing a grievance that would have been relevant to the claims in this case, but still managed to continue filing other grievances. If Sango actually had been intimidated out of filing grievances, his grievance report would have been empty after he filed his complaint.

Furthermore, Sango does not actually say that intimidation by the COs caused him to forgo filing grievances. In other words, Sango does not say that the grievance system was unavailable to him. His affidavit is shown below.



(ECF No. 15.) Sango says he was threatened; he does not say that he was prevented from using the grievance system. To the contrary, the record before the Court indicates that the system was available to him.

The undersigned wishes to note that *Brandt* involved direct acts of intimidation and alleged threats that could cause an ordinary prisoner to choose not to report the prison officials' actions in a grievance due to fear of physical harm or violence. Those allegations are not present in this case. Sango has not made any allegations that he was directly threatened by Defendants with physical harm if he reported the COs' actions in a prison grievance. Sango asserted in his complaint that officer Eubanks told a group of prisoners that they would receive misconduct tickets because Sango had a filed a lawsuit against Eubanks. Sango asserts that Eubanks's

statement regarding giving misconduct tickets (which he contends also implicates Fleury) had the same effect as calling Sango a snitch. However, Sango never explains how this statement, even if true, prevented him from being able to use the grievance system before he filed this action.

In summary, documents presented by Defendants show that Sango did not exhaust a grievance through Step III of the process at any time relevant to this case. (*See* ECF No. 13-3 (MDOC Prisoner Step III Grievance Report); ECF No. 16-2, PageID.93 (Prisoner Grievance Summary Report).) And, second, Sango has not adduced evidence showing that the grievance system was not available to him

## V. Recommendation

The undersigned respectfully recommends that the Court grant Defendants' motion for summary judgment (ECF No. 12) and dismiss Sango's complaint without prejudice due to Sango's failure to exhaust his administrative remedies.

Dated:  May 5, 2021            /s/ *Maarten Vermaat*
                               MAARTEN VERMAAT
                               U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).

14